624 A.2d 657

**Robert S. WADDINGTON**

v.

**Katrina V. WADDINGTON, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 28, 1993.

Filed May 12, 1993.

Arthur S. Cohen, Hollidaysburg, for appellant.

Amy E. Webster, Hollidaysburg, for appellee.

Before TAMILIA, HUDOCK and HOFFMAN, JJ.

TAMILIA, Judge.

Katrina V. Waddington, wife, appeals the Order of March 18, 1992, which acknowledged the June 8, 1990 Order as binding (No. 702 Pittsburgh, 1992), and the Divorce Decree filed April 6, 1992 and made retroactive to July 8, 1990 (No. 703 Pittsburgh, 1992).

Following four hearings based upon husband's, Robert S. Waddington's, complaint and amended complaint in divorce, the Master filed a special report including the following recommendations which were subject of wife's exceptions and are now subject of this appeal: 1) all rights to husband's pension (which was not valued) should be distributed to husband; 2) wife would be required to pay husband $16,666.67, that is, a one-third share of the value of the marital home; 3) husband's payment of alimony pendente lite at the rate of $500 per month would cease April 30, 1990; and 4) husband would pay $2,000 for wife's costs and counsel fees. On June 8, 1990, the trial court entered an Order and supporting memorandum confirming the Master's report in its entirety and dismissing

wife's exceptions. Wife filed a petition for reconsideration under Pa.R.A.P. 1701(b)(3)(ii), **Effect of Appeal Generally,** on June 25, 1990. On that same date, the trial court filed a rule to show cause why the petition for Order granting reconsideration should not be granted and scheduled a hearing for July 2, 1990. Apparently because wife's attorney requested a continuance, said hearing did not occur and was never rescheduled thereafter (H.T., 3/18/92, p. 4). The matter lay dormant until December 18, 1991, when husband filed a petition for modification/termination of spousal support and a petition for Order for special relief under Pa.R.C.P. 1920.43, Special Relief, requesting therein that the court enter a final divorce decree and an Order making final the Master's report and recommendations.

On March 18, 1992, following oral arguments on husband's petitions, the court entered an Order finding that since no Order of reconsideration had been entered within thirty (30) days of the June 8, 1990 Order, it lost jurisdiction to further reconsider the case's merits. The court found the effect of the June 8th Order to be binding and further ordered that the divorce be granted effective July 8, 1990, the final day of the 30–day appeal period. The court reasoned:

This Court notes that although we have used the word "affirmed" in this order, we believe that we have have [sic] affirmed nothing since we lack jurisdiction of this matter to entertain it on either the merits or on an equitable status. We acknowledge, in our judgment, that this matter became final on July 8, 1990, rendering both parties in contempt[,] we would reasonably expect[,] for failure to abide the time periods during which certain things were likely to have been required of each after the passage of the appeal period on July 8, 1990. Since neither party has requested a finding of contempt and each has waited for the resolution of this issue, we exercise our own sound judgment, an exercise of judicial economy, by reinstituting (affirming) the Master's Report as of this date to avoid contempt petitions which would be denied by this Court in any event on the fact of the record, both parties having awaited this decision.

(Order, Carpenter, III, J., 3/18/92, p. 3.) Thereafter, on April 6, 1992, the court made final the divorce decree retroactive to July 8, 1990.

In addition to the allegations of error noted in her exceptions, supra, wife now argues the court erred in entering the divorce decree retroactively since, by so doing, wife's right to due process was violated. She contends that since no final divorce decree was filed until recently, she never had the ability to appeal the equitable distribution findings, and a retroactive decree leaves her without any remedy to appeal from the loss of her property rights.

Husband counters the court's action was proper since no Order of reconsideration was entered within the 30–day period following the court's Order of June 8, 1990 which confirmed the Master's report and dismissed wife's exceptions thereto. He argues the court correctly determined the effective date of the final divorce decree to be the date said decree could have been entered since both parties had lost any further rights of review.

While we recognize the basis for husband's reasoning, we do not accept his ultimate conclusion. Retroactivity could be construed to be proper to avoid the consequence of an intervening marriage, but for purposes of appeal and distribution of marital property, the effective date of the decree is the date it was filed by the trial court. Although appellant claims an appeal was filed in this Court and was quashed (Appellant's brief, pp. 5, 8), appellant has not included a copy of the filed notice of appeal nor has she supplied us with an appeal number. Moreover, our review of the trial court's docket entries and the record and our search of the indexing system/computerized files of this Court in our prothonotary's office fails to disclose the filing of a previous appeal. This, however, is of no consequence to the wife's right of appeal in this matter, as such an appeal would have been interlocutory and subject to quash or dismissal pending entrance of a final decree of divorce.

Pursuant to the trial court's theory, under Pa.R.A.P. 1701(b)(3)(ii) a timely ... within the 30 days and failure of the

court to grant reconsideration expressly within the 30–day period does not work as an extension of the appeal time and must be treated as a denial of reconsideration. *Schoff v. Richter*, 386 Pa.Super. 289, 562 A.2d 912 (1989). As discussed below, however, Rule 1701(b)(3)(ii) is not applicable in this situation and does not result in the loss of jurisdiction by the court or the loss of the right to appeal by the appellant. The Divorce Code has uniquely provided for the resolution of this issue. While the Master may be appointed pursuant to 23 Pa.C.S. § 3321, Hearing by master, to take testimony and make a report and findings, either party may demand a hearing de novo before the court. When the court, following exceptions by the wife, filed an Order and supporting Memorandum confirming the Master's report and dismissing wife's exceptions, all that remained to be done was entry of the decree by the court. The petition for reconsideration was redundant and unnecessary and Pa.R.A.P. 1701(b)(3)(ii) does not apply.

Rule 1920.55, **Master's report. Notice. Exceptions. Final Decree,** provides:

> (c) If exceptions are filed … the court shall hear argument on the exceptions within ten days and enter an appropriate final decree. No motion for Post–Trial Relief may be filed to the final decree.

It, therefore, follows that the court in this case should have entered its decree following argument on the exceptions and appeal would lie directly from the decree. Despite the erroneous finding by the trial court that it lost jurisdiction of the matter after thirty days, it in fact had jurisdiction to enter the decree at any time.

In a very similar case, *Campbell v. Campbell*, 357 Pa.Super. 483, 516 A.2d 363 (1986) (en banc), we found that pursuant to Pa.R.A.P. 1701(b)(6), the court may "(6) [p]roceed further in any matter in which a nonappealable interlocutory order has been entered, notwithstanding the filing of a *notice of appeal or a petition for review of the order.*" *Id.* (emphasis added). So, in either event, whether an appeal had been taken or a petition for reconsideration had been filed, the court had

jurisdiction to enter a decree and the right of appeal would properly lie from the decree. The Divorce Code provides at 23 Pa.C.S. § 3323, Decree of court:

(a) **General rule.**—In all matrimonial causes, the court may either dismiss the complaint or enter a decree of divorce or annulment of the marriage.

(b) **Contents of decree.**—A decree granting a divorce or an annulment shall include, after a full hearing, where these matters are raised in any pleadings, an order determining and disposing of existing property rights and interests between the parties, . . . .

(c) **Bifurcation.**—In the event that the court is unable for any reason to determine and dispose of the matters provided for in subsection (b) within 30 days after the report of the master has been filed, it may enter a decree of divorce or annulment. . . .

The remedies available to the trial court were explicit and effective to bring this case to a conclusion with a final appealable Order.

In *Campbell,* we held:

A pre-divorce Order of equitable distribution, even one entered upon the mistaken assumption that a divorce decree has already been entered, is not a final Order. . . . The courts of common pleas are only empowered to make equitable distribution contemporaneously with or subsequent to a decree of divorce. This is because the settlement of economic and property claims is merely a part of the trial court's broader power to terminate the marriage. Equitable distribution is an incident of divorce, not marriage.

*Id.* at 488–489, 516 A.2d at 365–366 (citations omitted.) The decree in this case, despite its characterization as being retroactive by the trial court, was entered as a final appealable Order on March 18, 1992. The Order of March 18, 1992, as to equitable distribution and nonappealability is a nullity. The appeal by the parties from that decree was timely and we may properly review the matters on their merits.

Due to the hiatus in this case, the record before us is insufficient to make an explicit determination on the issues

presented. Two matters call for further hearing and review because of apparent abuse of discretion in affirmance of the Master's findings by Judge Quigley and denial of reconsideration by Judge Carpenter. The Master ignored the requirement that value be placed on the husband's pension accumulated between the date of marriage, September 15, 1959, and the date of final separation in March 1985, with its present value to be determined at the time of distribution. Since husband retired in 1979 with a vested pension, the wife's share must be computed on its value in 1979 and include increased value to the date of distribution in accordance with the "coverture fraction" of the marital asset. *See* T.T., 4/6/89, pp. 200–202; Master's Report, 1/12/90, pp. 5–6. The wife's pension, if any, must be similarly treated. *LaBuda v. LaBuda,* 349 Pa.Super. 524, 503 A.2d 971 (1986); *King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984). The very size of the sum may require a deferred distribution of the wife's share of the pension as opposed to direct payment in full to her. *See King, supra.* The second has to do with the proper award of alimony pendente lite and counsel fees. Since this reevaluation and distribution will totally distort the validity of distribution awarded in the trial court as well as the basis for alimony pendente lite and counsel fees, we are unable to go further in ascertaining the propriety of the decree of distribution.

We, therefore, direct that on remand the evidence presented by the Master's report be reviewed by the trial court in a trial de novo and additional testimony be taken to bring the value of the pensions up to date so that an appropriate distribution can be made. The need for alimony pendente lite must be determined from the 1990 date of cut-off to the present, as well as the continuing need until this matter is terminated.

Divorce decree affirmed, but its effective date is modified to April 6, 1992. Order of distribution vacated and case remanded for proceedings consistent with this Opinion.

Jurisdiction relinquished.