J.A19031/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTINE L. BERNARDO, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT R. BERNARDO, | : | |
| | : | |
| Appellant | : | No. 1838 WDA 2013 |

Appeal from the Order November 8, 2013
In the Court of Common Pleas of Clearfield County
Civil Division No(s).: 2011-1637-CD

BEFORE: BENDER, P.J.E., OLSON, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED AUGUST 13, 2014**

Appellant, Robert R. Bernardo ("Husband"), appeals from the equitable distribution order entered in the Clearfield County Court of Common Pleas.[1] Appellant contends the court erred in formulating a 55%/45% equitable distribution scheme in favor of Appellee, Christine L. Bernardo ("Wife"),

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant filed the instant appeal prior to the entry of a final decree in divorce. This Court issued a rule to show cause why the appeal should not be quashed pursuant to **Campbell v. Campbell**, 516 A.2d 363 (Pa. Super. 1986) (holding that order of equitable distribution may not be appealed until entry of final divorce decree.) If a decree is entered during the pendency of the appeal, the appeal is perfected. **Id.** at 366. On December 23, 2013, the court entered a final divorce decree. Therefore, this appeal is perfected. **See id.**

determining Appellee was entitled to a reduction of the value of the marital real estate for realtor's fees and commission, and awarding her alimony. We affirm.

The master made the following, *inter alia*, findings of fact:[2]

Wife was 44 years old at the time of the Master's hearing. . . .

Husband was 50 years old at the time of the Master's hearing. . . .

\* \* \*

The parties were married on September 5, 1992 and separated on September 29, 2011.

There was one child born of this marriage . . . dob [1996]. The child is in the primary physical custody of Wife.

\* \* \*

Husband is employed full-time with UPS. Husband has been employed in a full-time basis with UPS since 1998. . . .

Husband earns approximately $59,000.00 per year in his position as a UPS package car driver.

Husband also has numerous benefits available to him through his employment with UPS. Husband's benefits include: paid vacation, 401(k) plan, UPS pension plan, stock options, Teamster's pension plan and medical insurance.

Husband is a high school graduate and did attend West Virginia University for approximately two years. . . .

---

[2] The trial court "fully adopt[ed] all of the terms and provision of the Report and Recommendations filed by the Master . . . ." Trial Ct. Order, 11/8/13.

Wife is self-employed and is the sole employee of Chris Bernardo's Carpet Shack. Wife has owned and operated this business since approximately 2001.

Wife does not have benefits available to her employment, although Wife has started her own IRA fund. At the time of the Master's hearing Wife depended on Husband for her health insurance.

Wife is a high school graduate and also holds an Associate's Degree in Art, Letters & Sciences from Penn State University.

Wife additionally has taken courses during the marriage in regards to real estate and has a license as a Nail Tech.

Wife also has experience working in interior design, but is not licensed in this area.

Master's Report & Recommendation, 9/18/13, at 4-6 (citations to transcript and paragraph numbers omitted).

The master recommended that a distribution scheme of 55%/45% division in favor of Wife.[3] Proposed Order, 9/18/13, at 1. The master also recommended that Wife receive alimony in the amount of $300 per month for a period of two years from the date the proceedings are finalized. *Id.* at 3.

Husband filed exceptions to the report and recommendation of the master. The court held a hearing and subsequently dismissed Husband's exceptions. The court entered an order adopting the report and

---

[3] We note that the parties stipulated to the value of the marital property. *See* Stipulation & Supplemental Stipulation, 8/9/13.

recommendations filed by the master. This timely appeal followed. Husband filed a timely court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Husband raises the following issues for our review:

[1]. Did the lower court err in determining that [Husband] has "numerous benefits available" to him, which warrants the uneven distribution scheme?

[2]. Did the lower court err in determining that [Husband] has not contributed to the education, training and increased earning power of [Wife]?

[3]. Did the lower court err in determining that the parties are similarly situated in regards to the ability to acquire future capital assets and income?

[4]. Did the lower court err in determining that [Wife] is automatically entitled to a reduction of the value of marital real estate for realtor's fees and commission pursuant to 23 Pa.C.S. § 3502(a)(10.2)?

[5]. Did the lower court err in awarding alimony to [Wife]?

[6]. Did the lower court err in determining that a fair and reasonable distribution of the marital estate should be 55%/45% in favor of [Wife]?

Husband's Brief at iv.

We address Issues 1, 2, 3, and 6 together because they are related.[4]

Husband first argues the court erred in determining, under 23 Pa.C.S. §

---

[4] We note that in issues 1, 2, and 3 in the argument section of Husband's brief, with the exception of the quotations of 23 Pa.C.S. § 3502(a)(6), 3502(a), 3502(a)(5), and 3502, respectively, Husband does not cite to or discuss any legal authority. The "failure to develop an argument with citation to, and analysis of, relevant authority waives that issue on review."

3502(a)(6), that he had numerous benefits available to him warranting the uneven distribution scheme. Husband states that as of January, 2014, he will have to pay for a portion of his medical insurance. *Id.* at 10. At the master's hearing Husband testified that he did not know the amount of his contribution. N.T., 6/7/13, at 203. Husband asserts that his pension is "a minor benefit at best" because at the present time his employer only contributes 0.5% to his pension, which is less than $3000 a year. Husband's Brief at 10. He claims that his "401(k) is not really a benefit" because his

---

*Harris v. Toys "R" Us-Penn, Inc.*, 880 A.2d 1270, 1279 (Pa. Super. 2005); *see also* Pa.R.A.P. 2119(b). However, because this defect does not impede our ability to conduct appellate review, we decline to find waiver.

Additionally, in Issue 6, Appellant claims the 55%/45% distribution of marital property is inequitable. Husband's Brief at 24. His sole argument is: "As not to waste this Honorable Court's time, [Husband] refers this Honorable Court to all the previous arguments in this brief since the factors for equitable distribution have already been addressed in their own section or in the alimony section." *Id.* at 24-25.

Where an appellant incorporates previous issues by reference as the argument for an issue, this Court has declined to consider the issue separately. In *Lynn v. Pleasant Valley Country Club*, 54 A.3d 915 (Pa. Super. 2012), we held:

> Although [the a]ppellant lists five questions for our review, his arguments with respect to issues one and two are intertwined. We address those issues together. [The a]ppellant's arguments with respect to issues three and five incorporate previous arguments by reference, with no additional discussion. . . . As a result, we dispose of these issues in our analysis of [the a]ppellant's other issues.

*Id.* at 918. Analogously, we address Issue 6 in our analysis of Husband's other issues. *See id.*

employer does not make any contribution to it. *Id.* at 10-11. He states that his stock option is not a benefit because he is required to pay full price for the company stock. *Id.* at 11.

Husband's second claim is that the court erred in failing to give him credit, under subsection 3502(a)(4), for paying for Wife's classes for interior design and real estate and to become a nail technician. *Id.* at 12. He avers that he "sustain[ed] the family unit through his income." *Id.* He also points out that the master and the court emphasized the fact that Wife "is not using her classes or licenses in her current position as a small business owner." *Id.*

In his third issue, Husband avers that the court erred, under subsection 3502(a)(5), in determining that "the parties are similarly situated in regard to the ability to acquire future capital assets and income." *Id.* Husband points out that Wife's "average annual gross income is approximately $53,000[,]" while his is $59,000. *Id.* at 13. He concedes that "[b]ased on those incomes alone, one could make an argument that the parties are similarly situated or [he] is in a better position moving forward." *Id.* at 14. Husband claims the distribution of assets 55%/45% in favor of Wife is inequitable. *Id.* at 24.

> We review an equitable distribution order for an abuse of discretion.
>
> A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order

effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

**Reber v. Reiss**, 42 A.3d 1131, 1134 (Pa. Super. 2012) (citations omitted), *appeal denied*, 62 A.3d 380 (Pa. 2012). Furthermore, "[i]n the context of an equitable distribution of marital property, a trial court has the authority to divide the award as the equities presented in the particular case may require." **Id.** at 1137 (citation omitted).

Section 3502 of the Divorce Code governs the equitable distribution of marital property and provides:

Factors which are relevant to the equitable division of marital property include the following:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502(a)(1)-(11).

Instantly, the master considered the statutory factors. As to the benefits which Husband has available to him pursuant to Sections 3502(a)(4-6) the Master opined:

> Wife earned a certification as a Nail Tech and took a class in real estate during the marriage while Husband worked. Wife does not use her education in either one of these areas and has been employed as the owner/operator of Chris Bernardo Carpet Shack. Neither party has contributed to the increased earning capacity of the other. . . .
>
> The parties are similarly situated in regard to the ability to acquire future capital assets and income. Husband has a greater ability in his work in regard to salary and benefits. Wife, being self-employed, has had fluxuating (sic) income, although historically Wife's income has been similar to but slightly less than Husband's. Wife however has no benefits offered to her given that she is self-employed. The parties were fortunate through the marriage to have acquired significant assets and not accrue significant debt. . . .
>
> Both parties have their primary source of income being their full-time employment. The significant difference between the parties is the benefits that Husband is able to receive through his employment. While Wife has managed to acquire two IRA accounts, Husband has available paid vacation, a 401(k), multiple pensions and stock options, as well as medical insurance. Wife currently is covered under Husband's medical insurance, however after a divorce decree is granted Wife will have to obtain her own insurance or pay the figure of $609.00 per month under COBRA.

Master's Report & Recommendation at 10-11. We discern no abuse of discretion. *See Reber*, 42 A.3d at 1134.

Fourth, Husband claims the court erred "in determining that [Wife] is automatically entitled to a reduction of the value of marital real estate for realtor's fees and commission pursuant to 23 Pa.C.S. § 3502(a)(10.2)." Husband's Brief at 15. Husband avers that he "strongly disagrees with this interpretation of the statute." *Id.* He explains that the parties stipulated

that Wife will receive three properties, and points out that Wife testified she has "no intention to ever sell or liquidate any of the properties." *Id.* at 16.

In **Balicki v. Balicki**, 4 A.3d 654 (Pa. Super. 2010), the trial court reduced the marital value of the husband's insurance agency to account for tax ramifications and expenses of sale. *Id.* at 657. On appeal before this Court, the wife argued that "the tax ramifications and expenses of sale can only be considered if [the husband] is likely to sell the marital interest in the insurance agency." *Id.* at 663. This Court rejected wife's argument:

> This theory violates the clear directive from the legislature to consider the tax ramifications and expense of sale, which "need not be immediate and certain." The Source and Official Comment to 23 Pa.C.S. § 3502(a)(10.1) explain its history and leave no doubt [a h]usband's tax ramifications are relevant, where a sale is likely or not.
>
> > [Previously, trial courts] have required tax ramifications to be immediate and certain in order for them to be considered in equitable distribution. New subsection (a)(10.1) seeks to change this interpretation by making clear that tax ramifications are relevant and need not be immediate and certain.
>
> It is crystal clear that the Legislature intended to stop the practice of the lower courts analyzing the prospect of sale of an asset . . . . We believe the Legislature intends the assets simply be given the value they would have at distribution after deducting every expense necessary to achieve liquidation. Since the language in the Divorce Code concerning the immediacy and certainty of the expense of sale is identical, it also is relevant.

*Id.* at 663-64 (Pa. Super. 2010) (alteration omitted).

Contrary to Husband's claim, the court did not hold that Wife was "automatically" entitled to a reduction of the value of the marital property.

***See*** Husband's Brief at 15. Instead, the master reduced the marital value of the properties after consideration of ***Balicki*** and testimony that Wife has no immediate plans to sell the properties.

> Wife has argued that real estate to be awarded to Wife should be reduced by the costs of transfer and sale of said real estate. Specifically Wife wants said values to be reduced by 7%, six percent (6%) being attributed to a realtor's commission and one percent (1%) being one-half of the transfer tax (transfer tax is typically a total of 2%, however parties to a transaction will split that equally between buyer and seller). Both Husband and Wife agree that the 6% realtor's commission and 1% transfer tax are standard in real estate transactions. Wife argues that pursuant to 23 Pa.C.S.A. § 3502(a)(10.2) which indicates the expense of the sale, transfer or liquidation associated with a particular asset, **which expense need not be immediate and certain**. (emphasis added) Husband disagrees with reducing Wife's real estate considerations by these amounts and cites to the case of ***Balicki v. Balicki***, 4 A.3d 654 (Pa. Super. 2010). Husband stresses that the Divorce Code does not make a deduction for expenses of sale mandatory. Husband cites to the ***Balicki*** decision to support this claim.

> In reviewing the Superior Court's decision in ***Balicki***, the Court actually encourages the deduction for the expenses of the sale of assets. The Court states "We believe the legislature intends the assets simply to be given the value they would have at distribution after deducting every expenses necessary to achieve liquidation. . . ." ***See id.*** at 664. After analyzing the tax ramifications and expense of sale associated with the marital interest in an insurance agency, the Court in ***Balicki*** indicated that deducting the expenses of sale is a fair and just method for valuing said agency. ***See id.***

> **While the Master understands that it is not mandatory that the expenses of sale be deducted, and further recognizes that there was no testimony of immediate sale in this matter, the language of the statute as well as the Court's decision in *Balicki***

> **favor a reduction of 7% in this situation.** One key distinction needs to be noted however regarding the positions of the parties in applying the 7% reduction in that it is recommended that this be given to all real estate and [marital] components of real estate of all parties. . . .

Master's Report & Recommendation at 18-20 (emphasis added). We agree. *See Balicki*, 4 A.3d at 663-64.

Fifth, Husband argues the trial court erred in awarding Wife alimony based upon the statutory factors in 23 Pa.C.S. § 3701(b)(1) through (17) and avers that the statute militates against an award of alimony. Husband's Brief at 19-23. He claims that "[a]s per the stipulations of the parties, both parties, especially [Wife], will have more than sufficient assets and minimal liabilities to cover their needs moving forward." *Id.* at 21.

This Court has stated:

> Our standard of review regarding questions pertaining to the award of alimony is whether the trial court abused its discretion. We previously have explained that "[t]he purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met." Alimony "is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay." Moreover, "[a]limony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill."

*Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa. Super. 2004) (citation omitted).

Pursuant to Section 3701(b), the court considers the following factors in determining whether to award alimony either for a definite or indefinite period:

> (1) The relative earnings and earning capacities of the parties.
>
> (2) The ages and the physical, mental and emotional conditions of the parties.
>
> (3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
>
> (4) The expectancies and inheritances of the parties.
>
> (5) The duration of the marriage.
>
> (6) The contribution by one party to the education, training or increased earning power of the other party.
>
> (7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.
>
> (8) The standard of living of the parties established during the marriage.
>
> (9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.
>
> (10) The relative assets and liabilities of the parties.
>
> (11) The property brought to the marriage by either party.
>
> (12) The contribution of a spouse as homemaker.
>
> (13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S. § 3701(b)(1)-(17).

Instantly, the master addressed all of the Section 3701 factors and concluded Wife was entitled to an award of alimony based upon the following factors: Husband has a steady income, while Wife's income fluctuates. Master's Report & Recommendation at 25. "Further, because she is self-employed, Wife does not have the benefit of the safety net through employer benefits that are offered to Husband." *Id.* "Wife . . . will need to purchase her own health insurance." *Id.* at 26. ""Wife has testified that through COBRA she would need to pay $609.00 per month for insurance. . . . Given the considerable size of this expense this would make a significant financial impact on Wife." *Id*. at 29 (citation to record omitted).

Furthermore, a review of the record belies Husband's assertion that "[a]s per the stipulations of the parties, both parties, **especially** [Wife], will have more than sufficient assets and minimal liabilities to cover their needs moving forward." *See* Husband's Brief at 21 (emphasis added). In support of this averment, Husband cites the master's report and recommendation at page 27 which states: "As was discussed under equitable distribution and as set forth on schedules A and B attached hereto, the parties have acquired significant assets while avoiding accrual of substantial debt." *See* Master's Report & Recommendation at 27. Schedule A lists the assets to be awarded to Husband and Wife pursuant to the 55%/45% distribution. *Id.* at Schedule A. Schedule B reflects the marital debt. *Id.* at Schedule B. Wife's debt totaled $25,393.04 and Husband's debt was $5,867.18. The Master averred: "The parties have stipulated to the values and ownership of most of the assets in this matter. The parties were fortunate to be able to acquire a number of assets without the accrual of significant debt. Following equitable distribution each party will be in possession of a substantial number of assets." *Id.* at 28-29.

The master found:

> While Husband is correct there are some costs associated with the health insurance and that the percentage of employer contribution to pensions have gone down, he still maintains a more favorable position because these benefits are offered through his employment, while Wife has no such benefits being self-employed. Additionally once the parties are divorced, Wife, who has been covered under Husband's health insurance plan, will need to purchase her

own health insurance. This will create an additional expense to Wife thus reducing the amount of income she has available to her.

*Id.* at 25-26. The master concluded, "The parties have acquired significant assets which will be distributed through equitable distribution, in addition while Wife is at somewhat of a disadvantage due to not have as many benefits as Husband, this is remedied through the awarding of alimony to Wife." *Id.* at 30. We discern no abuse of discretion. *See Teodorski*, 857 A.2d at 200.

Order affirmed.

Olson, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/13/2014