J. A15023/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LISA PAIGE HELMKAMP HOBYAK, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 1643 EDA 2015 |
| | : | |
| MICHAEL SCOTT HOBYAK | : | |

Appeal from the Order, April 28, 2015,
in the Court of Common Pleas of Delaware County
Civil Division at No. 93-08569

| | | |
|---|---|---|
| LISA PAIGE HELMKAMP HOBYAK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| MICHAEL SCOTT HOBYAK, | : | No. 1739 EDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Order, April 28, 2015,
in the Court of Common Pleas of Delaware County
Civil Division at No. 93-08569

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA AND FITZGERALD,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED OCTOBER 04, 2016**

Lisa Paige Helmkamp Hobyak ("Wife") and Michael Scott Hobyak ("Husband") each appeal from the trial court's March 6, 2015 amended equitable distribution order, as made final by the entry of a divorce decree on April 28, 2015.  After careful review, we affirm on the basis of the

---

* Former Justice specially assigned to the Superior Court.

comprehensive and well-reasoned Pa.R.A.P. 1925(a) opinions of the Honorable John L. Braxton.

The trial court summarized the relevant facts and procedural history of this case as follows:

> [Wife] and [Husband] were married on April 16, 1983. On or about June 14, 1993, Wife filed a Complaint in Divorce; however, thereafter, the parties reconciled until their ultimate separation on January 2, 2004. From 2004 until 2011, multiple petitions and appeals were filed including petitions related to the following: injunctive relief, discovery issue resolution, contempt allegations, special relief requests, conference requests, requests to relist, and multiple appeals to the Superior Court. On or about September 6, 2011, the Honorable Kathrynne Durham issued an Order after a hearing Ordering that "if [there is] an appeal from the recommendation of the hearing officer, Donald Lehrkinder, Esquire, the appeal will be assigned to the Honorable John L. Braxton."
>
> Thereafter the Equitable Distribution hearing officer, Master Lehrkinder[,] issued a recommendation which was signed as an Order of Court and thereafter appealed on September 20, 2011 upon [Wife's] Request for a hearing ***de novo***. A hearing was scheduled before the Honorable John L. Braxton for January 4, 2012. At the hearing, Stipulations of the Parties (hereafter "the Stipulation") were presented to the Trial Court and a Court Order was entered thereafter on January 10, 2012, entering the Stipulation as an Order of Court. The Stipulation contained background information of the parties, including Wife's W-2 information for the years 2007-2010, Husband's gross and net income for 2002-2011, the parties' marriage information, stipulated values of certain marital assets, the parties' agreed upon separate assets, and certain information relative to Wife's support claim.

At the hearing, both parties' waived their right to present live testimony, choosing instead, "to proceed by colloquy with the Court where I [Counsel for Husband] state our position with regard to various positions, Ms. Casale [Counsel for Wife] states the position of [Wife], and the Judge then if he has any questions of either of us [counsel] or you [Husband] and [Wife] will do it in a manner without you getting on the witness stand and testifying." Both parties responded on the record that they understood and agreed to the procedure as outlined by their counsel. Importantly, this was a scheme developed and agreed to exclusively by the parties. The [trial c]ourt permitted counsel to try the case as they [chose] to do and accepted counsel's summation of testimony and evidence, as the parties mutually agreed on how to procedurally advance at trial.

Counsel likewise jointly agreed to supplement the record post-hearing by agreeing on the record to submit various proofs and items. Counsel agreed to submit certain items and proofs directly to the Trial Court in lieu of presenting testimony and evidence during the Trial Court proceeding. Both parties were fully cognizant that the Trial Court would be considering post-trial submissions in rendering an Equitable Distribution Order, this again being a joint decision by the parties. Indeed, the parties' requested the Trial Court to consider post-trial submissions and such submissions, although available to each other for review, were never objected to in written form or otherwise. Importantly, both counsel had abundant opportunity to review the hefty submissions and make objections as the Equitable Distribution Order was not issued until November 25, 2013.

On or about January 2, 2014, Wife, by and through her counsel, filed a Motion for Reconsideration of the November 25, 2013 Order. On or about July 14, 2014, the Trial Court held a hearing on Wife's Motion for Reconsideration and Husband's response thereto. After the July 14, 2014

hearing, the Trial Court found sufficient grounds to reconsider portions of the November 25, 2013 Order, although specifically refusing to rehear the case in its entirety as Wife requested. Wife was, however, granted an additional hearing with respect to a certain parcel of property, 3805-A Otter Street, Bristol, Pennsylvania (hereafter "3805-A Otter Street")[,] which Wife contended was an asset never before disclosed to her. A full and fair hearing on the limited issue of 3805-A Otter Street occurred on January 7, 2015.

On or about March 6, 2015, the Trial Court entered an Amended Equitable Distribution Order, which corrected certain valuations that were inconsistent with the Stipulation (although consistent with certain of the parties' post-trial submissions), modified the November 25, 2013 Order based upon the parties' joint representation that the Stipulation erroneously contained the incorrect number of shares of Bancorp stock, and furthermore found 3805-A Otter Street to be a pre-marital asset with a **_de minimus_** increase in value based upon its assessment and the landlocked nature of the parcel at issue.

Trial court opinion, 9/18/15 at 2-5 (No. 1643 EDA 2015) (citations to notes of testimony and footnotes omitted; some bracketed information in original).

On April 28, 2015, the trial court entered a decree in divorce, which made final its March 6, 2015 amended equitable distribution order. On May 26, 2015, Wife filed a timely notice of appeal, and Husband filed a timely cross-appeal on June 8, 2015. Both parties complied with the trial court's directive and filed timely concise statements of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). Thereafter, on September 22, 2015, the trial court filed separate Rule 1925(a) opinions

- 4 -

addressing each party's claims. (***See id.***; trial court opinion, 9/22/15 (No. 1739 EDA 2015).)

Our standard of review of awards of equitable distribution is well settled:

> A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

***Reber v. Reiss***, 42 A.3d 1131, 1134 (Pa.Super. 2012), ***appeal denied***, 62 A.3d 380 (Pa. 2012), citing ***Biese v. Biese***, 979 A.2d 892, 895 (Pa.Super. 2009).

In fashioning an equitable distribution award, the trial court is required to consider, at the very least, the enumerated factors set forth in 23 Pa.C.S.A. § 3502(a)(1)-(11). However, this court has noted that,

> [t]here is no simple formula by which to divide marital property. The method of distribution derives from the facts of the individual case. The list of

factors [enumerated in Section 3502(a)] serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions.

***Wang v. Feng***, 888 A.2d 882, 888 (Pa.Super. 2005) (citations omitted).

Instantly, Wife raises 11 multi-layered issues in her 77-page appellate brief to this court. (***See*** Wife's brief at 13-16.) Wife's Rule 1925(b) statement, in turn, raises 20 claims of error, some of which have not been briefed on appeal. After a thorough review of the record, including the briefs of the parties and the applicable law, and in light of this court's scope and standard of review, it is our determination that there is no merit to the issues Wife raises on appeal. We conclude that the trial court's September 22, 2015 opinion authored in response to Wife's Rule 1925(b) statement comprehensively discusses and disposes of each of her claims. (***See*** trial court opinion, 9/22/15 (No. 1643 EDA 2015).) For the ease of our discussion, we have set forth the applicable pages of the trial court's opinion where each of these claims is addressed, and adopt those portions as our own for purposes of this appellate review.

**1. Did the Trial Court abuse its discretion and misapply the law when it evenly divided the marital estate given the length of the marriage, the tremendous disparity in income between the parties, and the disparities between the separate, non-marital estates of the parties?**

J. A15023/16

Wife's brief at 13, 45 (emphasis added); addressed in trial court opinion,

9/22/15 at 9-11 (No. 1643 EDA 2015).

> **2. Did the Trial Court abuse its discretion and misapply the law when it ignored the stipulated earnings history of Wife, and found that, at the time of the hearing, Wife was employed by Hope Paige Designs, Inc., and held an interest in Hope Paige Designs, Inc. when, at the time of the hearing, Wife was never a shareholder, officer, director, or partner of Hope Paige Designs, Inc., and was otherwise unemployed?**

Wife's brief at 13, 51 (emphasis added); addressed in trial court opinion,

9/22/15 at 9-11 (No. 1643 EDA 2015).

> **3. Did the Trial Court commit an abuse of discretion, misapply the law, and fail to follow proper legal procedure when it determined Husband's earnings and future earning capacity when it did not consider, as set forth in the Stipulation of the Parties, Husband's 2009 income of $1,690,000.24 and Husband's 2011 income of $2,668,109.00, and when it ignored the credible evidence regarding Husband's ability to receive future bonuses from the business, ignored the fact that Husband was running the business, and ignored the fact that, pursuant to a May 6, 2010 agreement with [his] father, Husband has full control and authority over the business?**

Wife's brief at 13-14, 53 (emphasis added); addressed in trial court opinion,

9/22/15 at 11 (No. 1643 EDA 2015).

> **4. Did the Trial Court abuse discretion and misapply the law when it accepted and**

> permitted Husband to claim 3803 Otter Street was pre-marital property, where, throughout the litigation and until the day before trial, Husband represented that it was marital property, and when it ignored the stipulated increase in value of 3803 Otter Street when Husband presented no credible evidence to establish the value at the time of the gift?

Wife's brief at 14, 56 (emphasis added); addressed in trial court opinion, 9/22/15 at 11-12 (No. 1643 EDA 2015).

> 5. **Did the Trial Court commit an abuse of discretion and misapply the law when it ignored the sworn testimony of Wife's expert appraiser as to the value 3805 Otter Street, and imposed upon Wife the duty to present evidence of the alleged value of the gift of 3805 Otter Street to Husband?**

Wife's brief at 14, 58 (emphasis added); addressed in trial court opinion, 9/22/15 at 12-13 (No. 1643 EDA 2015).

> 6. **Did the Trial Court commit an abuse of discretion and misapply the law when it ignored the New Jersey litigation between the parties involving Rycoja, maintained the parties' status and interest as partners in Rycoja, and credited the Husband with $85,734.00 he paid in taxes on the management fees he improperly received from Rycoja, which he was ordered to repay by the New Jersey Court, thereby not providing for an equitable distribution of all marital property and leaving the parties involved in continuing litigation?**

Wife's brief at 14-15, 60 (emphasis added); addressed in trial court opinion, 9/22/15 at 13-14 (No. 1643 EDA 2015); *see also* trial court opinion, 9/22/15 at 7-8 (No. 1739 EDA 2015).

> **7. Did the Trial Court commit an abuse of discretion and misapply the law when after the Trial Court granted Wife's Motion for Reconsideration, the Trial Court did not permit the parties to introduce updated appraisals and evidence regarding the value of and the depreciation of debt encumbering appreciating martial assets, such as *inter alia* Rycoja, 3803 Otter Street, and the Dreyfus IRA, which all appreciated in value between the date of the hearing, in January 2012 and the Court's Amended Equitable Distribution Order, entered March 6, 2015?**

Wife's brief at 15, 65 (emphasis added); addressed in trial court opinion, 9/22/15 at 14 (No. 1643 EDA 2015).

> **8. Did the Trial Court commit an abuse of discretion and misapply the law by not including the cash value of the Lincoln Benefit Life Insurance policy in the marital estate where the life insurance trust created by Husband had expired, thereby making him the owner of the life insurance, and where, until the eve of trial, Husband had represented that the cash value was included in the marital estate?**

Wife's brief at 15, 67 (emphasis added); addressed in trial court opinion, 9/22/15 at 16 (No. 1643 EDA 2015).

> **9. Did the Trial Court commit an abuse of discretion and misapply the law when it**

> credited Husband for (i) repairs to the marital home where there was no evidence to prove that Husband, and not his Company, paid for the repairs and issued payment for those repairs from his personal accounts; (ii) credited Husband for voluntary post-separation payments to Wife consisting gifts and expense payments, and (iii) failed to provide Wife with 100% credit for payments she made for repairs and maintenance of the marital home?

Wife's brief at 15-16, 69 (emphasis added); addressed in trial court opinion, 9/22/15 at 17 (No. 1643 EDA 2015).[1]

> 10. Did the Trial Court commit an abuse discretion and misapply the law when it refused to consider post-separation, marital estate distributions totaling $91,000.00 that Husband received from Second Generation, which were specifically excluded from income for support and *alimony pendente lite* purposes and, therefore, should have been considered at the time equitable distribution?

Wife's brief at 16, 71 (emphasis added); addressed in trial court opinion, 9/22/15 at 18 (No. 1643 EDA 2015).

---

[1] We note that there is a typo on page 17, line 19 of the trial court's September 22, 2015 opinion, wherein the trial court inadvertently replaced the word "Appellee" (Husband) with "Appellant" (Wife). (*See* trial court opinion, 9/22/15 at 17 (No. 1643 EDA 2015).) It is apparent from the context that this sentence should properly read: "**Appellee (Husband)**, however, produced credible evidence that he did not actually receive the entire amount due to tax liabilities amounting to $85,734.00." (*Id.*)

Additionally, Wife raises the following issue with respect to Husband's claims on cross-appeal:

> **11. Did the Trial Court abuse its discretion, misapply the law, and fail to follow proper legal procedure when after the trial in this matter, the Trial Court granted Wife's Motion for Reconsideration?**

Wife's brief at 16, 73 (emphasis added).

Husband, in turn, raises the following issues in his cross-appeal:

> 1. Whether the Trial Court erred as a matter of law in issuing an equitable distribution order on March [6], 2015 when it never issued an Order granting reconsideration within thirty (30) days of the original equitable distribution Order of November 23, 2013, which would make the aforementioned Order a final, unappealed Order of Court Pursuant to Pennsylvania Rule of Civil Procedure 1930.2?

> 2. Whether the Trial Court erred as a matter of law in issuing an equitable distribution order on March [6], 2015 when more than one hundred and twenty (120) days had expired since the time in which the Court could have issued an Order granting reconsideration, that being May 6, 2014, which would make the aforementioned Order a final, unappealed Order of Court Pursuant to Pennsylvania Rule of Civil Procedure 1930.2?

Husband's brief at 15.

The trial court filed an opinion with regard to Husband's cross-appeal wherein it comprehensively discusses and disposes of these claims, with appropriate reference to the record and without legal error. (**See** trial court

J. A15023/16

opinion, 9/22/15 at 6 (No. 1739 EDA 2015).) Upon review, we affirm on the basis of that opinion as well for purposes of this appellate review.

Accordingly, for all the foregoing reasons, we affirm the trial court's March 6, 2015 amended order of equitable distribution, made final by the April 28, 2015 divorce decree.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/4/2016

- 12 -

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY,
PENNSYLVANIA

CIVIL ACTION – LAW

LISA P. HOBYAK                        :

      Plaintiff/Appellant,            :            Trial Court No.: 1993-8569

          v.                          :            Superior Court No.: 1643 EDA 2015

MICHAEL S. HOBYAK                 :            IN DIVORCE

      Defendant/Appellee.           :

Bernard E. Zbrezeznj, Esquire for the Plaintiff/Appellant
    200 Four Falls Corporate Center, Suite 400; West Conshohocken, PA 19428

David E. Auerbach; Esquire for the Defendant/Appellee
    344 West Front Street; Media, PA 19063

**OPINION**

BRAXTON, J.                                                    Date: September 18, 2015

This is an appeal from an Equitable Distribution Order dated March 6, 2015, which

amended the Equitable Distribution Order dated November 25, 2013 after reconsideration was

granted. A Divorce Decree was entered April 28, 2015 thereby transforming the March 6, 2015

Order (hereafter "the Equitable Distribution Order") into a final appealable Order. Lisa P.

Hobyak (hereafter "Wife" or "Appellant") timely filed an appeal on May 26, 2015. Appellant

timely complied with the Trial Court's 1925(b) Order and filed a Concise Statement of Matters

Complained of on Appeal. On appeal, Appellant contends that the Trial Court abused its

discretion and committed errors of law when: permitting the parties to submit "post-hearing"

memorandum, allowing the attorneys' (who colloquyed their clients' on record) to make

representations to the court in lieu of direct testimony, making errors with respect to both parties'

earnings, finding certain property to be pre-marital, giving the parties the option to continue to

1

operate the business or participate in a buy-out or sale on the open market, crediting Appellee with certain taxes paid on income and received as management fees, not allowing the parties' the option to submit updated appraisals of marital debt and assets but limiting what portions of the Order entered November 25, 2013 would be reconsidered, using the March 31, 2009 value submitted by the parties for purposes of valuing the Dreyfus IRA, utilizing a blue book value as opposed to the trade-in price for Wife's vehicle, not including the cash value of the Life insurance policy in the marital estate, utilizing evidence submitted by Appellee with respect to value of Hobyak LLP, awarding certain credits, and failing to take into account post-separation marital estate distributions.

For the reasons as set forth below, Appellant's contentions are without merit.

## FACTUAL AND PROCEDURAL HISTORY

Appellant and Appellee were married on April 16, 1983. On or about June 14, 1993, Wife filed a Complaint in Divorce; however, thereafter, the parties reconciled until their ultimate separation on January 2, 2004. From 2004 until 2011, multiple petitions and appeals were filed including petitions related to the following: injunctive relief, discovery issue resolution, contempt allegations, special relief requests, conference requests, requests to relist, and multiple appeals to the Superior Court. On or about September 6, 2011, the Honorable Kathyrnanne Durham issued an Order after a hearing Ordering that "if an appeal from the recommendation of the hearing officer, Donald Lehrkinder, Esquire, the appeal will be assigned to the Honorable John L. Braxton."

Thereafter the Equitable Distribution hearing officer, Master Lehrkinder issued a recommendation which was signed as an Order of Court and thereafter appealed on September 20, 2011 upon Appellant's Request for a hearing *de novo*. A hearing was scheduled before the

2

Honorable John L. Braxton for January 4, 2012. At the hearing, Stipulations of the Parties (hereafter "the Stipulation") were presented to the Trial Court and a Court Order was entered thereafter on January 10, 2012, entering the Stipulation as an Order of Court. The Stipulation contained background information of the parties, including Wife's W-2 information for the years 2007-2010, Husband's gross and net income for 2002-2011, the parties' marriage information, stipulated values of certain marital assets, the parties' agreed upon separate assets, and certain information relative to Wife's support claim.

At the hearing, both parties' waived their right to present live testimony, choosing instead, "to proceed by colloquy with the Court where I [Counsel for Husband] state our position with regard to various positions, Ms. Casale [Counsel for Wife] states the position of Lisa [Appellant], and the Judge then if he has any questions of either of us [counsel] or you [Appellee] and Lisa [Appellant] will do it in a manner without you getting on the witness stand and testifying." (N.T. 1/4/2012, at p. 6). Both parties responded on the record that they understood and agreed to the procedure as outlined by their counsel. (N.T. 1/4/2012, at p. 6, 8). Importantly, this was a scheme developed and agreed to exclusively by the parties.[1] The Court

---

[1] Mr. Auerbach (counsel for Husband): "Michael, you understand that you have a right to a hearing with testimony, both of yourself, experts with regard to various issues involved with the case. You understand that in order to try to have the matter resolved as quickly as possible that we have agreed to proceed by colloquy with the Court where I state our position with regard to various positions, Ms. Casale [Wife's counsel] states the position of Lisa, and the Judge then if he has any questions of either of us or of you and Lisa will do it in a manner without you getting on the witness stand and testifying. Do you understand that's the procedure we've discussed and we're going to proceed in that manner.
Michael Hobyak: I believe I understand that yes."
Mr. Auerbach: And are you satisfied to do it in that manner?
Michael Hobayk: I am.
The Court: The Court will accept his admission.
Ms. Casale (Counsel for Wife): You understand that what we have agreed to do today is allow Mr. Auerback and I to summarize what you would actually testify to, understand?
Lisa Paige Hobyak: Yes.
Ms. Casale: And that you are trusting that I will be able to recite the information that you testify about accurately, you understand?
Ms. Hobyak: Yes. (N.T. 1/4/2012, at p. 6-8).

3

permitted counsel to try the case as they choose to do and accepted counsel's summation of testimony and evidence, as the parties mutually agreed on how to procedurally advance at trial.

Counsel likewise jointly agreed to supplement the record post-hearing by agreeing on the record to submit various proofs and items. Counsel agreed to submit certain items and proofs directly to the Trial Court in lieu of presenting testimony and evidence during the Trial Court proceeding.[2] Both parties were fully cognizant that the Trial Court would be considering post-trial submissions in rendering an Equitable Distribution Order, this again being a joint decision by the parties. Indeed, the parties' requested the Trial Court to consider post-trial submissions and such submissions, although available to each other for review, were never objected to in written form or otherwise. Importantly, both counsel had abundant opportunity to review the hefty submissions and make objections as the Equitable Distribution Order was not issued until November 25, 2013.

On or about January 2, 2014, Wife, by and through her counsel, filed a Motion for Reconsideration of the November 25, 2013 Order. On or about July 14, 2014, the Trial Court held a hearing on Wife's Motion for Reconsideration and Husband's response thereto. After the July 14, 2014 hearing, the Trial Court found sufficient grounds to reconsider portions of the November 25, 2013 Order, although specifically refusing to rehear the case in its entirety as Wife requested. Wife was, however, granted an additional hearing with respect to a certain parcel of property, 3805-A Otter Street, Bristol, Pennsylvania (hereafter "3805-A Otter Street") which Wife contended was an asset never before disclosed to her. A full and fair hearing on the limited issue of 3805-A Otter Street occurred on January 7, 2015.

---

[2] Mr. Auerbach: There are various credits on both sides that are disputed with regard to it. What we're suggesting that we will submit them to the Court of the various arguments as part of it rather than go through them now." (N.T. 1/4/2012, at p. 196)

4

On or about March 6, 2015, the Trial Court entered an Amended Equitable Distribution Order, which corrected certain valuations that were inconsistent with the Stipulation (although consistent with certain of the parties' post-trial submissions), modified the November 25, 2013 Order based upon the parties' joint representation that the Stipulation erroneously contained the incorrect number of shares of Bancorp stock, and furthermore found 3805-A Otter Street to be a pre-marital asset with a *de minimus* increase in value based upon its assessment and the land-locked nature of the parcel at issue.

On or about April 28, 2015, a Divorce Decree was entered and on or about May 26, 2015, Appellant filed an appeal raising the following for consideration:

1. While the Trial Court ordered the parties to submit "post-hearing" memoranda, the Trial Court did not order, and the parties did not agree, to the submission of additional, newly discovered evidence, and in accepting and considering the additional newly-discovered evidence, the Trial Court abused its discretion, misapplied the law, and failed to follow proper legal procedure.

2. Further, the Trial Court abused its discretion, misapplied the law, and failed to follow proper legal procedure when it denied the parties the right to cross-examine the witnesses regarding the newly presented evidence submitted in the "post-hearing" memoranda.

3. The Trial Court abused its discretion and misapplied the law when it evenly divided the marital estate given the length of the marriage, the tremendous disparity in income between the parties, and the disparities between the separate, non-marital estates of the parties.

4. The Trial Court committed an abuse of discretion and misapplied the law when it ignored the stipulated earning history of Wife, and found that, at the time of the hearing, Wife was employed by Hope Paige Designs, Inc., and held and interest in Hope Paige Designs, Inc. when, at the time of the hearing, Wife was never a shareholder, officer, director, or partner of Hope Paige Designs, Inc., and was otherwise employed.

5

5. The Trial Court committed an abuse of discretion, misapplied the law, and failed to follow proper legal procedure when it did not consider, as set forth in the Stipulation of the Parties, Husband's 2009 income of $1,690,000.24 and Husband's 2011 income of $2,668,109.00.

6. The Trial Court committed an abuse of discretion and misapplied the law when it ignored the credible evidence regarding Husband's ability to receive future bonuses from the business, ignored the fact that Husband was running the business, and ignored that, pursuant to a May 6, 2010 agreement with his father, Husband had full control and authority of the business.

7. The Trial Court committed an abuse of discretion and misapplied the law when it accepted and permitted Husband to claim that 3803 Otter Street was pre-marital property where, throughout the litigation and until the day before trial, Husband represented that it was marital property, and ignored Wife's expert appraiser's uncontested opinion as to the value of 3803 Otter Street.

8. The Trial Court committed an abuse of discretion and misapplied the law when it determined that the increase in value of 3803 Otter Street was only $10,876.00 where Husband presented no credible evidence to establish the value at the time of the gift.

9. The Trial Court committed an abuse of discretion and misapplied the law when it ignored the sworn testimony of Wife's expert appraiser as to the value of 3805 Otter Street, and imposed upon Wife the duty to present evidence of the alleged value of the gift of 3805 Otter Street to Husband.

10. The Trial Court committed an abuse of discretion and misapplied the law where it ignored the New Jersey litigation between the parties involving Rycoja, and maintained the parties' status and interest in partners in Rycoja, thereby not providing for an equitable distribution of all marital property and leaving the parties involved in continuing litigation.

11. The Trial Court committed an abuse of discretion and misapplied the law where notwithstanding its refusal to consider and equitably distribute the parties' interest in Rycoja, it used the January 2, 2012 equity in the real estate owned by Rycoja to determine a present buyout price, ignored the January 2, 2012 reduction in debt owned by Rycoja, and credited Husband with the sum of $85,734.00 he paid as taxes on income he improperly received as management fees from Rycoja, which he was ordered to repay by the New Jersey Court.

6

12. While the Court did not commit an abuse of discretion in granting Wife's Motion for Reconsideration, the Court did err in not permitting the parties to introduce updated appraisals and evidence regarding the value of and the depreciation of debt encumbering appreciating marital assets, such as *inter alia* Rycoja, Second Generation, 3803 Otter Street, and the Dreyfus IRA, which all appreciated in value between the date of the hearing, in January 2012 and the Court's Amended Equitable Distribution Order, entered March 6, 2015.

13. The Trial Court committed an abuse of discretion and misapplied the law when it used a March 31, 2009 value for the Dreyfus IRA rather than allocating a percentage of the current account balance.

14. The Trial Court committed an abuse of discretion and misapplied the law when it (i) ignored the undisputed evidence that in 2004, Wife only received $721 for the trade-in of the Chevrolet Suburan in 2004 because the proceeds were utilized to repay the loan on the vehicle; and (ii) utilized a 2012 blue book value for the Chevroloet Suburban to value the Chevrolet Suburan instead of utilizing a 2004 blue book value for the Chevrolet Suburban.

15. The Trial Court committed an abuse of discretion and misapplied the law by not including the cash value of the Life Benefit life insurance policy in the marital estate where the life insurance created by Husband had expired, thereby making him the owner of the life insurance, and where, until the eve of trial, Husband had represented that the cash value was included in the marital estate.

16. The Trial Court committed an abuse of discretion and misapplied the law when it permitted and accepted Husband's post-hearing evidence regarding the value of Hobyak LLP, which the Trial Court mistakenly refers to as Hobyak LLC.

17. The Trial Court committed an abuse of discretion and misapplied the law when it gave Husband a credit in the amount of $49,776.91 for a post-separation loan Husband allegedly utilized to pay for repairs to the marital home where there was no evidence to prove that Husband, and not his Company, paid for the repairs and issued payment for those repairs from his personal accounts.

18. The Trial Court committed an abuse of discretion and misapplied the law when it granted Husband a credit of $117,882.84 for voluntary post-separation payments to Wife consisting of post-separation gifts and expense payments.

7

19. The Trial Court committed an abuse of discretion and misapplied the law when on the one hand, it gave Husband 100% credit for $209,835 consisting of mortgage payments he paid at a time when Wife was not in residence, joint federal and state income tax payments he paid, homeowners' insurance payments he paid for the marital home, and real estate taxes he paid on the marital home, ignoring Husband's share of those debts, and on the other hand, it only provided Wife a 50% credit for payments she made for similar and like marital debts, expenses and other obligations. Just as the Trial Court allocated Wife's credits 50/50, it should have treated Husband's credits similarly.

20. The Trial Court committed an abuse of discretion and misapplied the law when it refused to consider post-separation, marital estate distributions totaling $91,000.00 that Husband received from Second Generations, which were specifically excluded from Husband's income for support and alimony *pendent lite* purposes and, therefore, should have been considered at the time of equitable distribution.

## DISCUSSION

**a. The Trial Court did not Abuse its Discretion or Commit an Error of Law when it considered "newly discovered evidence" and "denied the parties' right to cross-examine on "newly discovered" evidence. (¶¶ 1-2, 16)**

As stated in detail above, both parties made representations on the record that there would be post-trial submissions supporting their respective positions on equitable distribution. Appellant's reference to "newly discovered" evidence, does not delineate with the requisite specificity how the Trial Court erred and what specific information was considered and not permitted cross-examination thereon. Importantly, the parties' post-trial submissions were made available to each other and no objections were raised with consideration to anything submitted thereon. The Trial Court, therefore, proceeded to render a decision based upon the representations raised during the court proceeding, the Stipulation of the parties, and the post-trial submissions. This was a scheme developed exclusively by the parties themselves, whereby,

8

they agreed to post-trial submissions and failed to make objection to any content in the post-trial submissions.

Furthermore, the parties decided not to present testimony, with the exception of William P. Larkin, Jr., Certified Public Accountant, who testified at the Trial Court's suggestion, therefore both parties effectively waived their right to cross-examination. (N.T. 1/4/2012, at p. 123). Finally, when Appellant presented testimony and evidence at the subsequent hearing on reconsideration of the November 25, 2013 Order that she possessed no knowledge of an asset, which was "newly discovered," the Trial Court held an additional hearing and allowed Appellant the right to present testimony and evidence and permitted cross-examination thereon.

Therefore, the Trial Court did not commit an error of law or abuse its discretion when proceeding to render a decision in a fashion agreed upon by the parties, neither of which voiced any objection to the use of any information found in the post-trial submissions.

b. **The Trial Court utilized reasonable discretion when rendering a decision to equitably divide the marital estate and did not ignore the stipulated earnings of Appellant when rendering a decision. (¶ 3-6).**

A trial court has broad discretion when "fashioning an award of equitable distribution." Dairympie v. Kilishek, 920 A.2d 1275, 1280 (Pa. Super. 2007). The standard of review when assessing the propriety of an equitable distribution order is "whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." Biese v. Biese, 979 A.2d 892 (Pa. Super. 2009). Furthermore, there "is no simple formula for dividing marital property interests." And the method of distribution derives from the facts of the individual case. Hurley v. Hurley, 492 A.2d 439 (Pa. Super. 1985). Indeed the purpose of the equitable distribution order is an ultimate determination of economic justice between the parties.

9

Section 3502, Equitable Division of Marital Property (a), states:

When fashioning equitable distribution awards, the trial court must consider: the length of the marriage, any prior marriages, age, health, skills, employability of the parties, sources of income and needs of the parties; contributions of one party to the increased earning power of the other party; opportunity of each party for future acquisitions of assets or income; contribution or dissipation of each party to the acquisition, deprecioation or appreciation of marital property, value of each party's separate property, standard of living established during the marriage; economic circumstances of each party and whether the party will be serving as custodian of any dependent children. 23 Pa.C.S.A. § 3502(a)(1)-(11)

Furthermore, "the weight to these statutory factors depends on the facts of each case and is within the court's discretion." Mercatell v. Mercatell, 854 A.2d 609, 611 (Pa. Super. 2004), citing Gaydos v. Gaydos, 693 A.2d 1368 (Pa. Super. 1997). In the instance case, the Trial Court did take into consideration the length of the marriage but also took into consideration Appellant's long enduring income derived through APL, her employability and potential given her part in co-founding a global business, Hope Paige Design. (N.T. 1/4/2012, at p. 153). Although Appellant contends she received very little benefit from Hope Paige Designs, in the form of a meager salary, evidence presented demonstrated that Appellant categorized herself as a "co-founder." In this respect, Appellant demonstrates great entrepreneurial skill and even if no major economic benefit is immediately derived, her part in its co-founding clearly makes Appellant an asset for other corporations and companies and her experience in forming a global business from the "ground-up" is invaluable.

Although the Trial Court concedes that representations by counsel for Appellant at the time of trial indicated that Appellant was no longer employed at Hope Paige Design, during which period she received a very modest salary. This error, however, proved to be a harmless error as the Trial Court did utilize the stipulation to derive Appellant's earnings.

10

With respect to consideration of Appellee's income, the Trial Court did indeed consider Appellee's past earning history, but took as credible representations made during the course of the hearing and post-trial submissions that such earnings were predominately derived from bonuses and that the economic state at the time of trial made it unlikely such large bonuses would be duplicated going forward. Indeed, certain grants that Appellee's business received from the federal government were ending and that heretofore guaranteed source of income for the business was no longer available.

The Trial Court, therefore, found it appropriate to issue an equal distribution of the marital estate, believing such distribution, based on the parties' submissions and representations at trial to be the best scheme to effectuate economic justice of the parties.

**c. The Trial Court did not err when valuing 3803 and 3805-A Otter Street ((¶¶ 7-9)**

The Trial Court agrees with Appellant's assertion that prior to the January 2, 2013 hearing Appellee believed 3803 Otter Street to be marital, but immediately prior to the hearing received information which lead him to contest its marital nature. The parties agreed and stipulated that the value of 3803 Otter Street was $137,500.00; however, Appellee represented that "a trust was created for tax purposes because the income beneficiaries of this trust were going to be my client [Appellee] and the three children." (N.T. 1/2/2013, at p. 23). Therefore, accordingly, Appellee took the position that the trust and its contents were non-marital. The Court permitted the parties an opportunity to further investigate whether 3803 Otter Street was marital or non-marital. The parties at that point, choose to address this issue through post-trial submissions, rather than requesting a new hearing date.[3]

---

[3] Counsel for Appellant: "I would ask Your Honor to allow me at least the opportunity to have a report submitted from Mrs. Hobyak's accountant in our post-trial submissions provided to rebut whatever information the accountant has provided to Mr. Hobyak." (N.T. 1/2/2013, at p. 44)

11

Importantly, Appellant never requested of the Trial Court that the case be re-listed based upon this information; rather, Appellant agreed to proceed with the understanding that both parties' would submit reports and post-trial submissions on the issue for the Trial Court's consideration. The Trial Court based its decision with respect to value and increase of 3803 Otter Street on the parties' Stipulation, as well as the post-trial submissions, which the parties agreed to allow the Trial Court to consider.

The Trial Court held a separate hearing on 3805-A Otter Street, based on Appellant's representation during reconsideration that there was a newly discovered asset that was not previously disclosed. A hearing was held on January 7, 2015, at which point Appellee testified that he obtained 3805-A Otter Street prior to marriage. Furthermore, 3805-A Otter Street is a land-locked parcel with an assessment of approximately $5,000.00. (N.T. 1/7/2015, at p. 40, See P-2).

Appellant presented testimony and evidence from John J. Coyle, III, president of Coyle, Lynch & Co., a real estate and personal property appraisal company. Mr. Coyle described 3805-A as a .51 acre lot, located in "the rear of other real estate with no actual frontage on the street and the method by which people enter this property and exit this property is across another improved parcel of industrial real estate known as 3815 Otter Street that's occupied by Pennco Tech." (N.T. 1/7/2015, at p. 17, 18). In making its valuation, Mr. Coyle considered its function to the adjoining property. (N.T. 1/7/2015, at p. 18). Mr. Coyle, "valued the property as a whole." (N.T. 1/7/2015, at p. 20).

The Trial Court could not accept as credible any testimony or evidence with respect to valuation including a finding that this land-locked parcel could be sold on the open-market for

---

Counsel for Appellant: "I would like the opportunity again, Mr. Auerbach I think has agreed, to supplement whatever post-trial submissions I have with whatever report my client has" (N.T. 1/2/2013, at p. 50).

12

the value outlined in Mr. Coyle's report. The Trial Court likewise found that the valuations considered 3805-A Otter Street's value next to accompanying parcels and not in isolation. For those reasons, the Trial Court found the value of 3805-A to be *de minimis* based upon its low assessed value and as Appellant was only entitled to an increase in value of this oddly shaped, landlocked strip of land, the Trial Court found there to be no increase in value.

### d. The Trial Court did not err in its treatment of Rycoja (¶¶ 10-11)

Counsel for both parties represented that their clients wished to retain Rycoja, which is the parties' biggest marital asset and is likewise an income generator. As the parties' had been operating Rycoja jointly during the pendency of the divorce proceedings, the Trial Court gave both parties the option of continuing to jointly operate the business. Cognizant, however, that the parties' personal history may interfere with their ability or desire to co-operate Rycoja, the Trial Court incorporated into the Court Order how Rycoja should be distributed in the event the parties choose not to operate it jointly.

The Trial Court first comprised a buy-out scheme available for either party. Using Wife's real estate appraisal of $2,250,000 less the current outstanding mortgage stipulated to be $865,861.75 which yielded an equity value of $1,384,138.25. Importantly, no evidence of additional debt beyond the outstanding mortgage was provided to the Trial Court for consideration. Contrary to Appellant's assertion, the fair market value as appraised reduced by the outstanding mortgage yielded the equity value, the division of which was calculated for purposes of a buy-out. The buy-out scheme therefore provided either party the option to purchase the other's interest for $692,069.23 (or half the equity value).

Finally, the Trial Court ordered that if both parties' were interested in retaining Rycoja then Rycoja would simply be placed on the open market and the net sale proceeds would be

13

evenly divided between the parties. The Court, therefore, did order distribution of Rycoja and therefore, there is a final distribution.

Appellant next challenges the Trial Court's decision to credit Appellee with certain tax consequences related to Rycoja. Specifically, limited representations occurred at the time of trial whereby a court in the state of New Jersey issued an Order requiring Appellant to repay certain amounts of monies that Appellant contends were taken as management fees. Appellant, however, indicated that although the gross amount taken from Rycoja was accurate that it did not take into consideration the fact that Appellant did not receive the gross amount, but the gross amount was reduced by tax consequences.

Both parties submitted post-trial submission to the Trial Court and the Trial Court found in its equitable discretion that Appellee's debt to Rycoja should be reduced by the tax consequences Appellee showed to have occurred.

e. **The Trial Court did not err in not allowing the parties' to enter into evidence updated appraisals and evidence regarding the value and depreciation of assets and debts. (¶ 12)**

On reconsideration, Appellant essentially requested the Trial Court to disregard the parties' stipulation as to value and allow a complete re-trial of the case. Finding such request not only impracticable and against judicial economy but also unfair to Appellee who would likewise be forced to expend additional resources securing additional appraisals and undergo the additional expense of another full equitable distribution hearing, the Trial Court declined such request.

The Trial Court properly resolved to abide by the parties' stipulation as to value, which was submitted to the Court and entered as an Order of Court.

14

**f. The Trial Court did not err or commit an abuse of discretion when utilizing the value of the Dreyfus IRA that the parties stipulated to. (¶ 12)**

Appellant next complains that the Trial Court erred when utilizing the value of the Dreyfus IRA that the parties agreed to at the time of trial.[4] The parties' however agreed in open court to utilize the value of $44,313.00. Therefore, to the extent that Appellant now complains a different value should have been used or percentages, the Trial Court rejects this mandate and contends that it acted appropriately and with the consent and acquiescence of both parties, whose counsel acknowledged on the record and indeed requested the Trial Court to utilize this value.

**g. The Trial Court did not err when valuing Appellant's 2004 Chevrolet Suburban**

In spite of Appellant's contention, the record is replete of the reason why Appellant only received $721.00 for the trade-in of her vehicle. Now, for the first time, Appellant contends that she received $721.00 "because the proceeds were utilized to repay the loan on the vehicle." At the time of trial, however, counsel for Appellee indicated that the valuation was much too low and inconsistent with the market value of the vehicle. Appellant did not respond with any reason for the low valuation. Because Appellant bargained and accepted an amount lower than market value, Appellee argued that the Blue Book value of the 2004 Chevrolet Suburban should be used for the valuation instead. Indeed, counsel for Appellee indicated on the record that he would be submitting a Blue Book value. (N.T. 1/4/2012, at p. 115). Appellant never objected to the submission at any time full knowing that it would considered by the Trial Court as evidence of value. Appellant also presented no testimony as to any debt or loan associated with said vehicle.

Appellant next contends that the Trial Court should have used the 2004 blue book value as opposed to the 2012 Blue Book value, presumably in accordance with the date of separation.

---

[4] "We're willing to accept the $44,313.00, we think that there is additional interest as a result, Your Honor, but we don't have that information." (N.T. 1/2/2012, at p. 114).

15

Appellant, however, waived this argument by failing to make appropriate objections to the Trial Court or the post-trial submissions. Secondly, a 2012 blue book value would provide for a lower value than utilizing the 2004 value, when the vehicle was eight years newer. The 2004 blue book value would increase Appellee's award and decrease Appellant's award. Therefore, Appellant's choice to submit evidence of value utilizing a 2012 blue book value did not harm or prejudice Appellant and indeed was to the benefit of Appellant. The Superior Court has stated that, "when determining the value of marital property upon divorce, the trial court is free to accept all, part or none of the evidence as to the true and correct value of the property." Biese v. Biese, 979 A.2d 892 (Pa. Super. 2009).

The Trial Court, therefore, and within its discretion utilized the valuation provided by Appellee in the form of a 2012 blue book valuation.

**h. The Trial Court did not err when not considering the cash value of the Lincoln Benefit Insurance Policy. (¶ 15)**

Counsel represented at the time of trial that the Lincoln Benefit Life Insurance policy is a policy held in trust which Pennco pays the premium for. (N.T. 1/4/2012, at p. 104). Appellee argued this was not a marital asset. The Trial Court considered this representation along with the post-trial submissions and appropriately concluded that this was a non-marital asset. Appellant now complains that this trust has since been terminated; however, Appellee was afforded ample opportunity to present to the Trial Court proof contradicting the representations made at trial with respect to the nature and character of the Lincoln Benefit Life Insurance Policy, and simply failed to do so.

16

Appellant now, however, makes a complaint on appeal with nothing in the record or post-trial submissions to support the contention that the trust has been terminated and that this transforms the Lincoln Benefit Life Insurance Policy into a marital asset.

### i. The Trial Court did not err in its determinations and awards of credits (¶17-19)

The Pennsylvania Superior Court has stated that: "characterization of debt as marital is not necessarily determinative of which party is liable for its satisfaction upon divorce." Biese v. Biese, 979 A.2d 892 (Pa. Super. 2009). Additionally, the amount and duration of alimony pendent lite may be considered in equitable distribution. Id.

In spite of Appellant's contentions, the Trial Court did not award Appellee one hundred percent of the credits and Appellant fifty percent of the credits; rather the Trial Court awarded Husband a refund of his tax liability in its entirety that had already been remitted to Appellant, an amount agreed upon by the parties for sewage payment, mortgage payment, 2003 tax debt and real estate taxes, certain post-separation expenses paid, half of the post-separation line of credit used to make repairs and likewise credited Appellant with half the cost of repairs to the marital estate.

As described above, Appellee was involved in litigation related to mismanagement of Rycoja whereby certain monies which Appellant contended were maintenance fees were taken from the business. Based upon representations of the parties, New Jersey entered an Order requiring Appellee to re-pay this money taken by Appellant. Appellant, however, produced credible evidence that he did not actually receive the entire amount due to tax liabilities amounting to $85,734.00. Because the Trial Court found it inappropriate to award Appellant the windfall of the tax consequences, the Trial Court credited Appellee for the taxes he had paid.

17

Furthermore, the parties agreed that the sewage payment, mortgage payment, 2003 tax debt and real estate taxes were to be credited to Appellee in the amount of $209,835.00. With respect to the post-separation expenses, the Trial Court concluded Appellee was entitled to a refund of such expenses given the fact that Appellee has long been paying *Alimony Pendente Lite* (hereafter "APL"), and its award anticipated Appellant would utilize APL for such maintenance. The Trial Court was not persuaded that these post-separation expenditures to Appellant were merely gifts and appropriately included them for equitable division. To allow Appellant to receive APL and be entitled to retain the post-separation expenses expended by Appellee would allow Appellant a double recovery. The Trial Court therefore permitted Appellee to be reimbursed 100% for the post-separation expenditures for expenses that Appellant should have paid with her APL award.

Furthermore, the Trial Court permitted Appellee to be reimbursed for half of the repairs to the marital home while likewise awarding Appellant half of the expenditures made to repair the marital home. The Trial Court took as credible the representations made during the course of the hearing and the post-trial submissions with respect to Appellee's expenditures on repair. The Trial Court, therefore, appropriately treated both parties equally when deciding the issue of who was entitled to receipt of credits.

**j. The Trial Court Did Not Err When Not Considering an Item it Was Not Asked to Consider.**

Finally, Appellant complains that the Trial Court erred when it "refused to consider post-separation marital estate distributions totally $91,000.00 that Husband [Appellee] received from Second Generations, which were specifically excluded from Husband's income for support and APL and should have been considered for Equitable Distribution." The primary issue, however,

18

is that the Trial Court was not asked to consider this $91,000.00 sum in equitable distribution. Furthermore, at the time the March 26, 2015 Order was entered, the parties were scheduled to proceed in Support Court before the Honorable Barry Dozor, therefore affording Appellant the opportunity to make argument that this sum should be included as income to Appellee.

## CONCLUSION

The vast majority of the issues that Appellant complains of on appeal are directly related to the schematic which both parties agreed to in order to effectuate equitable distribution. The parties waived their right to testify during the equitable distribution proceeding dated January 4, 2012, choosing instead to permit their then respective counsel to summarize their positions. They likewise agreed to allow the Trial Court to consider post-trial submissions, again, waiving their right to cross examine or challenge the validity of any documentation and agreeing beforehand that the Trial Court would be able to use these submissions as substantive evidence for purposes of valuation. Furthermore, even after the post-trial submissions were received by the court, no objection was made to anything presented to the Trial Court.

Indeed, it is only after the Trial Court entered an Equitable Distribution Order not to Appellant's liking that the scheme which counsel heretofore agreed to became a basis for crying court error. For the reasons set forth above, however, the Order should be affirmed.

BY THE COURT:

_Braxton_

J.

FILED JM 2005 SEP 22 PM 12: 16 OFFICE OF JUDICIAL SUPPORT DELAWARE CO. PA.

19

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY,
PENNSYLVANIA

CIVIL ACTION – LAW

LISA P. HOBYAK            –      :

         Plaintiff/Appellant,    :    Trial Court No.: 1993-8569

v.                     :    Superior Court No.: 1739 EDA 2015

MICHAEL S. HOBYAK       :    IN DIVORCE

         Defendant/Appellee  .   :

Bernard E. Zbrezeznj, Esquire for the Plaintiff/Appellant
    200 Four Falls Corporate Center, Suite 400; West Conshohocken, PA 19428

David E. Auerbach, Esquire for the Defendant/Appellee
    344 West Front Street; Media, PA 19063

## OPINION

BRAXTON, J.                                 Date: September 18, 2015

This is a cross appeal from an Equitable Distribution Order dated March 6, 2015, which amended the Equitable Distribution Order dated November 25, 2013 after reconsideration was granted. A Divorce Decree was entered April 28, 2015 thereby transforming the March 6, 2015 Order (hereafter "the Equitable Distribution Order") into a final appealable Order on April 28, 2015.

On cross-appeal, Michael S. Hobyak (hereafter "Husband" or "Cross-Appellant") filed a Concise Statement of Matters Complained of on Appeal, complaining that the Trial Court erroneously reconsidered the Order dated November 25, 2013 when it was filed in excess of thirty (30) days, the Trial Court erred in its distribution of Rycoja, and finally, the Trial Court erred when it did not reduce the amount of alimony pendent lite Husband was paying to Wife.

For the reasons as set forth herein, Husband's contentions are without merit.

1

(181)

## FACTUAL AND PROCEDURAL HISTORY

Appellant and Appellee were married on April 16, 1983. On or about June 14, 1993, Wife filed a Complaint in Divorce; however, thereafter, the parties reconciled until their ultimate separation on January 2, 2004. From 2004 until 2011, multiple petitions and appeals were filed including petitions related to the following: injunctive relief, discovery issue resolution, contempt allegations, special relief requests, conference requests, requests to relist, and multiple appeals to the Superior Court. On or about September 6, 2011, the Honorable Kathyrnanne Durham issued an Order after a hearing Ordering that "if an appeal from the recommendation of the hearing officer, Donald Lehrkinder, Esquire, the appeal will be assigned to the Honorable John L. Braxton."

Thereafter the Equitable Distribution hearing officer, Master Lehrkinder issued a recommendation which was signed as an Order of Court and thereafter appealed on September 20, 2011 upon Appellant's Request for a hearing *de novo*. A hearing was scheduled before the Honorable John L. Braxton for January 4, 2012. At the hearing, Stipulations of the Parties (hereafter "the Stipulation") were presented to the Trial Court and a Court Order was entered thereafter on January 10, 2012, entering the Stipulation as an Order of Court. The Stipulation contained background information of the parties, including Wife's W-2 information for the years 2007-2010, Husband's gross and net income for 2002-2011, the parties' marriage information, stipulated values of certain marital assets, the parties' agreed upon separate assets, and certain information relative to Wife's support claim.

At the hearing, both parties' waived their right to present live testimony, choosing instead, "to proceed by colloquy with the Court where I [Counsel for Husband] state our position with regard to various positions, Ms. Casale [Counsel for Wife] states the position of Lisa

2

[Appellant], and the Judge then if he has any questions of either of us [counsel] or you [Appellee] and Lisa [Appellant] will do it in a manner without you getting on the witness stand and testifying." (N.T. 1/4/2012, at p. 6). Both parties responded on the record that they understood and agreed to the procedure as outlined by their counsel. (N.T. 1/4/2012, at p. 6, 8). Importantly, this was a scheme developed and agreed to exclusively by the parties.[1] The Court permitted counsel to try the case as they choose to do and accepted counsel's summation of testimony and evidence, as the parties mutually agreed on how to procedurally advance at trial.

Counsel likewise jointly agreed to supplement the record post-hearing by agreeing on the record to submit various proofs and items. Counsel agreed to submit certain items and proofs directly to the Trial Court in lieu of presenting testimony and evidence during the Trial Court proceeding.[2] Both parties were fully cognizant that the Trial Court would be considering post-trial submissions in rendering an Equitable Distribution Order, this again being a joint decision by the parties. Indeed, the parties' requested the Trial·Court to consider post-trial submissions and such submissions, although available to each other for review, were never objected to in written form or otherwise. Importantly, both counsel had abundant opportunity to review the

---

[1] Mr. Auerbach (counsel for Husband): "Michael, you understand that you have a right to a hearing with testimony, both of yourself, experts with regard to various issues involved with the case. You understand that in order to try to have the matter resolved as quickly as possible that we have agreed to proceed by colloquy with the Court where I state our position with regard to various positions, Ms. Casale [Wife's counsel] states the position of Lisa, and the Judge then if he has any questions of either of us or of you and Lisa will do it in a manner without you getting on the witness stand and testifying. Do you understand that's the procedure we've discussed and we're going to proceed in that manner.
Michael Hobyak: I believe I understand that yes."
Mr. Auerbach: And are you satisfied to do it in that manner?
Michael Hobayk: I am.
The Court: The Court will accept his admission.
Ms. Casale (Counsel for Wife): You understand that what we have agreed to do today is allow Mr. Auerback and I to summarize what you would actually testify to, understand?
Lisa Paige Hobyak: Yes.
Ms. Casale: And that you are trusting that I will be able to recite the information that you testify about accurately, you understand?
Ms. Hobyak: Yes. (N.T. 1/4/2012, at p. 6-8).
[2] Mr. Auerbach: There are various credits on both sides that are disputed with regard to it. What we're suggesting that we will submit them to the Court of the various arguments as part of it rather than go through them now." (N.T. 1/4/2012, at p. 196)

3

hefty submissions and make objections as the Equitable Distribution Order was not issued until November 25, 2013.

On or about January 2, 2014, Wife, by and through her counsel, filed a Motion for Reconsideration of the November 25, 2013 Order. On or about July 14, 2014, the Trial Court held a hearing on Wife's Motion for Reconsideration and Husband's response thereto. The Trial Court was permitted to do so because the Divorce Decree had not yet been entered and thus the November 25, 2013 Order was an Interim and not Final Order. After the July 14, 2014 hearing, the Trial Court found sufficient grounds to reconsider portions of the November 25, 2013 Order, although specifically refusing to rehear the case in its entirety as Wife requested. Wife was, however, granted an additional hearing with respect to a certain parcel of property, 3805-A Otter Street, Bristol, Pennsylvania (hereafter "3805-A Otter Street") which Wife contended was an asset never before disclosed to her. A full and fair hearing on the limited issue of 3805-A Otter Street occurred on January 7, 2015.

On or about March 6, 2015, the Trial Court entered an Amended Equitable Distribution Order, which corrected certain valuations that were inconsistent with the Stipulation (although consistent with certain of the parties' post-trial submissions), modified the November 25, 2013 Order based upon the parties' joint representation that the Stipulation erroneously contained the incorrect number of shares of Bancorp stock, and furthermore found 3805-A Otter Street to be a pre-marital asset with a *de minimus* increase in value based upon its assessment and the land-locked nature of the parcel at issue.

On or about April 28, 2015, a Divorce Decree was entered and on or about May 26, 2015, Appellant filed an appeal raising the following for consideration:

1. The Trial Court erred in issuing an Amended Equitable Distribution Order which modified the original Equitable Distribution Order, in

4

effect granting reconsideration to Wife, because no Order granting reconsideration was entered within thirty (30) days of the original Equitable Distribution Order pursuant to Pa. R.C.P. 1930.2(e), that being January 6, 2014.

2. The Trial Court erred when it divided the marital estate via its March 6, 2015 Amended Equitable Distribution Order because it failed to properly distribute certain assets, including the limited liability company known as RYCOJA, in the following ways:

    a. Trial Court failed to order the property owned by RYCOJA be transferred to Husband;

    b. Trial Court failed to give Husband proper credit with regard to various funds, including those in which he was entitled to as a result of his purchase of the mortgage on the property owned by RYCOJA from the mortgage company because it had become due;

    c. Trial Court failed to take into consideration monies that Husband was required to pay as a result of a Court Order with regard to the same property from a New Jersey Court; specifically, Husband was required to reimburse over $300,000.00 to RYCOJA that were distributed to him for management fees and upon which he paid taxes. A portion of Wife's alimony pendent lite payments were based on these previously distributed fees. As a result of the New Jersey Order, she was essentially permitted to "double-dip" by becoming entitled to those monies through RYCOJA;

    d. Trial Court failed to take into consideration that monies paid by Pennco Tech (the tenant of the subject property) to Husband, the owner of the note which was in default, and monied paid by Pennco Tech to RYCOJA required to be paid by Court Order to satisfy the rental obligations under the lease, required Pennco Tech to pay rent twice and allowed Wife a double-benefit: (i). the benefit of the rental payments made to RYOJA (from which she benefited) that had previously been paid to Husband as holder of the note; and (ii.) a claim for a reduction of the obligations owned under the note because monies were received and kept by Husband during the same period.

3. The Trial Court erred by failing to appropriately reduce the amount of alimony pendent lite that Husband was paying to Wife under an

5

interim Order issued by a hearing officer which was appealed to the Trial Court.

## DISCUSSION

a. **The Trial Court did Commit an Error of Law when permitting reconsideration of the order dated November 25, 2013, when such Order was not a final equitable distribution order as the Divorce Decree was yet to be entered.**

The Superior Court has directed that "the time within which a trial court may grant reconsideration of its orders is a matter of law…" Estate of Haiko v. McGinley, 799 A.2d 155, 158 (Pa. Super. 2002). When reviewing a trial court's decision for a grant of reconsideration, such shall be reviewed for an error of law. McEwing v. Lilitz Mutual Ins. Co., 77 A.3D 639 (Pa.Super 2013). For questions of law, the Superior Court's standard of review is *de novo* and the scope of review is plenary. Mazurek v. Russell, 96 A.3d 372, 378.

Pennsylvania Rule of Civil Procedure 1930.2(e) states:

> If the court grants the motion for reconsideration, and files same, within the 30 day appeal period, it may, at any time within the applicable 120 day period thereafter, issue an order directing that additional testimony be taken. If it does, the reconsidered decision need not be rendered within 120 days, and the time for filing a notice of appeal will run from the date the reconsidered decision is rendered.

However, the statute allowing the trial court to modify or rescind an order within thirty (30) days after its entry applied only to final orders. Manufacturers and Traders Trust Co. v. Greenville Gastoenterology, S.C., 108 A.3d 913 (2015). A pre-divorce order of equitable distribution is not a final order. Campbell v. Campbell, 357 Pa. Super. 438, 516 A.2d 363. As the Divorce Decree was not entered until April 28, 2015, the equitable distribution order dated November 25, 2013 was interlocutory and not subject to the thirty day reconsideration parameter.

6

### b. The Trial Court did not err in its distribution of RYCOJA

Counsel for both parties represented that their clients wished to retain Rycoja, which is the parties' biggest marital asset and is likewise an income generator. As the parties' had been operating Rycoja jointly during the pendency of the divorce proceedings, the Trial Court gave both parties the option of continuing to jointly operate the business. Cognizant, however, that the parties' personal history may interfere with their ability or desire to co-operate Rycoja, the Trial Court incorporated into the Court Order how Rycoja should be distributed in the event the parties choose not to operate it jointly.

The Trial Court first comprised a buy-out scheme available for either party. Using Wife's real estate appraisal of $2,250,000 less the current outstanding mortgage stipulated to be $865,861.75 which yielded an equity value of $1,384,138.25. Importantly, no evidence of additional debt beyond the outstanding mortgage was provided to the Trial Court for consideration. The fair market value as appraised reduced by the outstanding mortgage yielded the equity value, the division of which was calculated for purposes of a buy-out. The buy-out scheme therefore provided either party the option to purchase the other's interest for $692,069.23 (or half the equity value).

Finally, the Trial Court ordered that if both parties' were interested in retaining Rycoja then Rycoja would simply be placed on the open market and the net sale proceeds would be evenly divided between the parties.

To the extent that Husband complains the Trial Court did not consider or give Husband a credit for various funds which he claims entitlement to by virtue of an alleged purchase of the mortgage on the property owned by RYCOJA, Husband failed to present adequate testimony

7

during the January 4, 2012 hearing adequately evincing such entitlement and Husband's post-trial memorandum merely asserts Husband's entitlement without the requisite proof.

Husband likewise failed to present any proof that Wife's *alimony pendent lite* award considered income for which he was Ordered by the State of New Jersey to reimburse to Rycoja. Furthermore, the support action was subsequently assigned to the Honorable Barry C. Dozor for disposition, affording Husband the opportunity to argue the merits thereof.

**c. The Trial Court did not err by choosing not to Order a reduction in *Alimony Pendente Lite* owed to Wife.**

Husband failed to elucidate at the January 4, 2012 hearing appropriate grounds for a reduction in Alimony Pendente Lite (hereafter "APL"). Although courts are permitted to deviate from the APL guidelines where special circumstances warrant an award adjustment, Husband, simply put, failed to present convincing evidence of such entitlement. Ball v. Minnick, 648 A.2d 1192. The Trial Court, did, however, take into consideration the amount of APL paid by Husband as well as the fact that Husband was not guaranteed future bonuses which heretofore amounted to a large portion of Husband's earnings when fashioning an appropriate distribution scheme.

**CONCLUSION**

For the reasons as set forth above, the Trial Court found it appropriate to enter an amended equitable distribution Order dated March 6, 2015.

FILED JM 2005 SEP 22 PM 12: 17 OFFICE OF JUDICIAL SUPPORT DELAWARE CO. PA.

BY THE COURT:

*Braxton*

BRAXTON, J.

8